```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ X
                                     :
HANJIN OVERSEAS BULK LTD.,           :
                                     :
                    Plaintiff,       :
        v.                           :    08 Civ. 9516 (BSJ)
                                     :    Memorandum & Order
CPM CORPORATION LTD. and ALTAI       :
INTERNATIONAL LTD.,                  :
                                     :
                    Defendants.      :
                                     :
-------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/15/09

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

Before the Court is the application of Defendant CPM Corporation Ltd. ("CPM") for an order directing Plaintiff Hanjin Overseas Bulk Ltd. ("Hanjin" or "Plaintiff") to post countersecurity in the amount of $336,519.82. For the reasons that follow, CPM's application is GRANTED.

## FACTS[1]

Plaintiff Hanjin commenced this action on November 5, 2008 by filing a Verified Complaint alleging that Defendant CPM had breached the terms of a September 23, 2008 charter party. (Compl. ¶¶ 1, 5.) On November 6, 2008, the Court issued an Order of Attachment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Supplemental Rules") up to the sum of

---

[1] The facts of this case are more fully set forth in the Court's Memorandum and Order of December 22, 2008 ("Order of December 22, 2008").

1

$867,327.36. The attachment order was served on several garnishee banks, and in November of 2008 four electronic fund transfers ("EFTs") totaling $472,154.81 were restrained.[2] (Order of December 22, 2008 at 2.) CPM thereafter moved to vacate the attachment of the funds and, in the alternative, requested an award of countersecurity. In a Memorandum and Order dated December 22, 2008, the Court denied CPM's motion to vacate but reserved decision on the issue of countersecurity pending further information from the parties. The Court now addresses CPM's request for countersecurity.

## LEGAL STANDARD

Supplemental Rule E(7)(a) provides that an attaching plaintiff "must give security for damages demanded in the counterclaim unless the court for cause shown, directs otherwise." Rule E(7)(a). The Second Circuit has clarified that "[a]lthough this Rule initially appears to make the posting of countersecurity mandatory whenever its conditions are satisfied, the final clause of the quoted language makes clear that the trial court possesses broad discretion in deciding whether to order countersecurity under such conditions." Result Shipping Co., Ltd. v. Ferruzzi Trading USA, Inc., 56 F.3d 394, 399 (2d Cir. 1995). "In deciding whether countersecurity should

---

[2] No additional funds have been restrained since November of 2008. (Pl.'s Mem. L. in Opp'n at 3.)

2

be ordered, two major principles govern: (1) parties should be placed on an equal footing with respect to security; and (2) Rule E(7) is not meant to be so burdensome so as to prevent the bringing of the suit." Totalmar Navigation Corp. v. ATN Indus., Inc., No. 08 Civ. 1659, 2008 WL 5111316, at *7 (S.D.N.Y. Dec. 3, 2008). In determining whether to order the posting of countersecurity, the "trial court may consider the merits of the counterclaim, but it 'should do no more than screen out totally frivolous claims by the counterclaimant.'" Ocean Line Holdings Ltd. v. China Nat'l Chartering Corp., 578 F. Supp. 2d 621, 627 (S.D.N.Y. 2008) (quoting Front Carriers Ltd. v. Transfield ER Cape Ltd., No. 07 Civ. 6333, 2007 WL 4115992, at *6 (S.D.N.Y. Nov. 19, 2007)).

## DISCUSSION

In this case, CPM has asserted a deadfreight counterclaim against Hanjin in the ongoing London arbitration proceeding. CPM alleges, inter alia, that "due to Hanjin's failure to maintain the Vessel's cranes properly" there was a "crane breakdown" that resulted in an inability "to load a full cargo" at the port of Pointe Noire in West Africa. (Moore Aff. ¶ 12.) As a result, CPM asserts that it suffered damages in the amount of $71,186.26 and thus requires countersecurity (after accounting for interest and the costs of arbitration) in the amount of $336,519.82. (Second Moore Aff. ¶¶ 4, 8.) Plaintiff

3

counters that it should not be required to post countersecurity because CPM's claim is "frivolous and clearly lacking in merit." (Pl.'s Mem. L. in Opp'n at 5.)

Upon review of the evidence presented by both parties, the Court finds that it cannot conclude that CPM's claim is frivolous. Plaintiff argues that CPM's claim is without merit because (1) the inoperability of the vessel's crane could not have been the reason for any alleged cargo shut-out given the availability of a floating/shore crane, (2) no additional cargo could have been loaded at Pointe Noire without breaching the draft limit, and (3) 7,000 cbm was to be the "intake" at Pointe Noire, and 7,007.299 cbm of cargo was loaded. However, it appears to the Court that there are disputed issues of fact with respect to each of these three arguments. Specifically, CPM maintains that the shore crane being used to load the vessel broke down before the full cargo was loaded, that the draft limit was higher than Plaintiff maintains, and that 10,000 cbm of cargo, not 7,000 cbm, was to be loaded at Pointe Noire. (Fan Decl. ¶¶ 7-10.) Additionally, although the Court is aware that CPM only brought this alleged cargo shut-out to Plaintiff's attention after Plaintiff commenced the instant proceedings, that CPM has changed the alleged amount of the shut-out at least once, and that CPM has almost no documentation to support its allegations, the Court is not prepared to say on this evidence

4

that CPM's claims are entirely frivolous.  Accordingly, the Court finds that CPM is entitled to some quantum of countersecurity.

Although CPM requests countersecurity in the amount of $336,519.82, the Court finds that figure to be inappropriate given the Court's doubts about the viability of CPM's counterclaim and given that Plaintiff is only partially secured for its claims against CPM.[3]  See Result Shipping, 56 F.3d at 400 (stating that the purpose of Rule E(7) is to ensure that the parties are placed on equal ground with respect to security). Taking these considerations into account, the Court finds $178,355.51 to be an appropriate amount of countersecurity.[4] Should Plaintiff attach additional funds belonging to CPM, CPM may file an application with the Court to increase the amount of countersecurity.

## CONCLUSION

For the reasons stated above, Defendants' request for countersecurity is GRANTED.  Plaintiff is directed to post countersecurity in the amount of $178,355.51.  Because the Court has now decided the issue of countersecurity, there is no need to hold the conference scheduled for May 20, 2009 at 10:30 a.m. The conference is, accordingly, cancelled.

---

[3] Plaintiff has succeeded in attaching only 53% of the security it seeks.
[4] This number represents 53% of CPM's requested amount of countersecurity.  It thus provides both CPM and Plaintiff with the same percentage of coverage for their claims.

SO ORDERED:

_____
BARBARA S. JONES
UNITED STATES DISTRICT JUDGE

Dated:   New York, New York
         May 14, 2009